**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Stan Koch & Sons Trucking, Inc.,

                              Plaintiff,         Civ. No. 05-1225 (RHK/AJB)
                                                     **MEMORANDUM OPINION**
                                                     **AND ORDER**

v.

Great West Casualty Company,

                              Defendant.

---

William L. Davidson, Brian A. Wood, and Matthew S. Frantzen, Lind, Jensen, Sullivan & Peterson, A Professional Association, Minneapolis, Minnesota, for Plaintiff.

James T. Martin, Gislason, Martin, Varpness & Janes, P.A., Edina, Minnesota, for Defendant.

---

**Introduction**

This is a dispute between Plaintiff Stan Koch & Sons Trucking, Inc. ("Koch")—an insured—and Defendant Great West Risk Management, Inc. ("Great West")—its insurer—arising from Great West's acceptance of coverage under Koch's insurance policy, and Great West's subsequent demand for payment from Koch of a $500,000 "Retention." Koch brought this declaratory judgment action against Great West arguing that Great West wrongfully accepted coverage in the context of a wrongful death action. The parties have filed cross-motions for summary judgment, each arguing for an interpretation of the

insurance policy favorable to its position. For the reasons set forth below, the Court will grant Great West's Motion and deny Koch's Motion.

**Background**

In July 2001, Great West and Koch entered into a contract for insurance (the "Policy") pursuant to which Great West agreed to provide Koch up to $3,000,000 in liability coverage. The Policy contains a Retention Endorsement (the "Retention")—central to this dispute—which provides:

> [Koch] agree[s] to reimburse [Great West] for the first $500,000 of any loss or claim for each accident which this insurance policy applies to. This amount shall be [Koch's] Retention.

(Policy at 15.) The Policy also provides that Great West "will settle or defend, as we consider appropriate, claim or 'suit' asking for damages which are payable under the terms of this Coverage Form." (Id. at 30.)

On March 22, 2002, Kelly Ann Kelly was killed in a car accident when the car in which she was a passenger crashed into the side of a trailer being pulled by a tractor-trailer rig. David White was the owner-operator of the tractor, and he was pulling the trailer for Supreme Transport Services, LLC (collectively "Supreme/White"). Supreme leased the trailer from United Trailer Leasing, a division of Hargol Corporation, which in turn is a wholly-owned subsidiary of Koch.

Kelly's husband ("Kelly") brought a wrongful death action in Minnesota state court against the driver of the car she was in, the driver of a car that was driving next to the car

she was in, and Supreme/White (the "Kelly Litigation").[1]  Koch was not a party to the Kelly Litigation.  Supreme/White tendered their defense in the Kelly Litigation to Sirius American Insurance Company ("Sirius") which insured Supreme/White and provided $1,000,000 of liability coverage.  (See Martin Aff. Exs. B, E.)  Sirius retained attorney Mick McNee to defend Supreme/White in the Kelly Litigation; Kelly was represented by attorney Steve Watters.  (Id.)

During the discovery phase of the Kelly Litigation, Watters obtained a copy of the Policy.  On June 4, 2003—with a trial in the Kelly Litigation scheduled for September 2003—Watters put Great West on notice of the Kelly Litigation and asserted that Great West's coverage was exposed because Supreme/White qualified as insureds under the Policy.  (Martin Aff. Ex. B.)  In his initial letter to Great West, Watters stated that "[a]ccording to [the Policy], there is coverage for the wrongful death of Kelly A. Kelly from this accident."  (Id.)  According to Watters, Supreme/White were insureds because the trailer qualified as a "covered auto" under the Policy, and they were using the trailer with Koch's permission.[2]  (Martin Aff. Ex. E.)

---

[1] Kelly also brought a dram shop claim against a bar alleging that, prior to the accident, the bar served alcohol to the driver of the car in which she was a passenger when the driver was obviously intoxicated.  See Kelly v. Ellefson, 712 N.W.2d 759, 764 (Minn. 2006).

[2] The Policy provides, under the heading "Who is an Insured":
The following are 'Insureds':
    a. You for any covered 'auto'.
    b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow . . . .
(Policy at 30.)

Great West initially took the position that the Policy did not extend to Supreme/White.  (See Martin Aff. Ex. D.)  Watters responded by suggesting that he would enter into settlement negotiations with Supreme/White, the end aim being to pursue Great West directly for coverage.  (See Martin Aff. Ex. F.)  In addition, McNee tendered the Kelly Litigation to Great West "to the extent coverage is provided under [the Policy]." (Martin Aff. Ex. G.)

In July 2003, Great West retained attorney Ted Smetak to advise it concerning its obligations to Supreme/White.  After an initial (lengthy) analysis, Smetak recommended that Great West deny coverage, recognizing that coverage could, if necessary, be admitted at a later date to pre-empt a Miller-Shugart settlement.[3]  (Martin Aff. Ex. H.)  However, when Smetak learned that settlement discussions among the parties in the Kelly Litigation contemplated a hybrid settlement agreement combining the features of a Miller-Shugart settlement agreement[4] with a Drake v. Ryan settlement agreement[5], he "suggest[ed] more

---

[3]Even in his initial analysis, Smetak acknowledged that "there are arguments to be made for and against coverage under the Great West policy," and that the position that the Policy does not cover Supreme/White, although valid, "might lose."  (Martin Aff. Ex. H.)  In a later letter, Smetak noted that "there is a risk that the Great West policy does apply," and suggested to Great West that: "[w]hen this is over, we should discuss some text which will eliminate this kind of argument for coverage."  (Id. Ex. I.)

[4]A Miller-Shugart settlement agreement occurs when an insured (here, Supreme/White) stipulates to a money judgment in favor of a plaintiff (here, Kelly), the plaintiff releases the insured from personal liability, and the plaintiff agrees to seek disputed liability coverage from the insurer (here, Great West).  Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982).

[5]Parties enter into a Drake v. Ryan settlement agreement when there are multiple layers of liability coverage, and a claimant (here, Kelly) settles a claim against the primary

caution in denying coverage . . . because denying coverage is a necessary pre-requisite to a Miller Shugart stipulated judgment and because [Great West] might not have another opportunity to step in and admit coverage." (Martin Aff. Ex. I.) Over the course of the roughly two months between the time Smetak was hired by Great West and Great West decided to accept coverage on behalf of Supreme/White, Smetak engaged in a number of detailed analyses regarding strategy surrounding the acceptance or denial of coverage under the Policy. (See Martin Aff. Exs. H, I, M, N.) Smetak's position regarding Great West's acceptance of coverage evolved over those two months—from initially advising Great West to deny coverage, to eventually having serious doubts with respect to whether a denial of coverage would be the best course of action. (Id.)

As the Kelly Litigation approached trial, and the parties' positions crystalized, it became clear that a Miller-Shugart settlement between Supreme/White and Kelly was a real prospect. Immediately before the trial began, Sirius entered into a Drake v. Ryan release with Kelly, which increased the risk that Supreme/White would enter into a Miller-Shugart settlement with respect to the Policy. (See Martin Aff. Ex. N.) On September 30, 2003, Great West determined to accept coverage to avert a Miller-Shugart settlement (id.); at the time it admitted coverage, Great West was concerned it would be unsuccessful in disproving coverage and was aware of (and shared) the widely held belief on the

---

liability insurer (here, Sirius) while preserving her right to proceed against the potentially applicable excess liability insurer (here, Great West). Drake v. Ryan, 514 N.W.2d 785 (Minn. 1994).

Supreme/White side of the Kelly Litigation that the prospects for a favorable verdict were good which, if proven correct, would moot the coverage issue (see Martin Aff. Ex. M).

The Kelly Litigation proceeded to trial and, despite projections to the contrary, the jury returned with a $2.7 million verdict, and assigned 60% of the fault to Supreme/White. See Kelly v. Ellefson, 712 N.W.2d 759, 765 (Minn. 2006). Supreme/White appealed the judgment, and the Minnesota Court of Appeals reversed and remanded for re-trial on the liability issues.[6] See Kelly v. Ellefson, 2005 WL 525548 (Minn. Ct. App. Mar. 8, 2005). In May 2005, while the verdict was on appeal, the claims of Corbin Ellefson, who was also injured in the accident, were being addressed in a mediation session and Great West agreed to pay Ellefson $750,000 to settle his claims. (Martin Aff. Ex. Q.) In accordance with the Retention Endorsement, Great West paid the full settlement to Corbin Ellefson and then requested reimbursement of $500,000 from Koch. (Id.) Koch declined to pay the Retention, asserting that it had "never acquiesced that coverage is applicable in this case." (Martin Aff. Ex. R.)

In June 2005, Koch filed this declaratory judgment action, seeking a declaration that its Retention "is not obligated over Koch's objection and without Koch's permission." (Compl. at 8.) In its claim for declaratory judgment, Koch alleges that it "did not own the tractor," that Supreme/White are not insureds under the Policy, and that the Retention "is

---

[6]The Supreme Court of Minnesota has since reversed the Court of Appeals on some evidentiary rulings, but left the remainder of the opinion in tact. See Kelly, 712 N.W.2d at 765-66.

not obligated because Great West does not have the authority under the Policy to unilaterally offer coverage or negotiate a settlement without Koch's consent, and Koch did not consent to coverage for this matter."  (Compl. ¶¶ 36-42.)

Great West filed an Answer and Counterclaim against Koch, seeking "a declaratory judgment . . . determining that Great West, under the facts and circumstances of this case, was obligated to provide coverage to the operator of the accident vehicle in connection with the claims made against him . . . ."  (Counterclaim ¶ 4.)

**Standard of Review**

Summary judgment is proper if, drawing all reasonable inferences favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  See Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Sch., 122 F.3d 1112, 1116 (8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for

trial. See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**Analysis**

Great West argues that it is entitled to summary judgment with respect to Koch's declaratory judgment action and its counterclaims seeking reimbursement of $500,000 from Koch. According to Great West, "the policy clearly states that it provides coverage for any trailers owned by Koch when being used by a third person with Koch's consent."[7] (Great West Mem. in Supp. at 16.) Koch responds that "[Supreme/White] were not 'insureds' under the Policy" (Koch Mem. in Opp'n at 16), Koch did not "legally 'own'" the trailer involved in the accident (id. at 17), and Great West breached its fiduciary duty to Koch when it chose to provide coverage under the policy (id. at 19). The Court will consider these arguments below.

Under Minnesota law, it is settled that the interpretation of an insurance contract is a question of law. Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 688 (Minn. 1997).

---

[7]Great West further contends that it "was vested with the unqualified right and duty to defend and make decisions about settlement." (Great West Mem. in Supp. at 21.) While Koch alleged in its Complaint that "Great West does not have the authority under the Policy to unilaterally offer coverage or negotiate a settlement without Koch's consent," (Compl. ¶ 42), it appears to have abandoned that claim in its summary judgment papers. Even if it currently pursues that claim, however, the Court determines that under the plain language of the Policy, Great West did have the authority to settle with Ellefson. The Policy provides that Great West "will settle or defend, as [it] consider[s] appropriate, claim or 'suit' asking for damages which are payable under the terms of this Coverage Form." (Policy at 30 (emphasis added).) Koch has not provided the Court with any argument to cast doubt on the applicability of this language establishing Great West's authority to settle on Koch's behalf.

In interpreting an insurance contract, the contract is to be construed as a whole, see id. at 692, and when the language of the insurance policy is clear and unambiguous, the language employed must be given its usual and accepted meaning, see Lobeck v. State Farm Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998). See also SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995) (citation omitted). "Exclusions are narrowly interpreted against the insurer." SCSC Corp., 536 N.W.2d at 314 (citation omitted).

Great West argues for coverage under the Policy based on the following Policy language:

> We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'
>
> 1. Who is an Insured
>    The following are 'insureds':
>    a. You for any covered 'auto'.
>    b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow . . . .

(Policy at 30.) The term "auto" includes "trailer" under the Policy. (Id. at 41.) Based on these provisions of the Policy, Great West argues that the trailer was a "covered auto," being used by Supreme/White ("anyone else"), with Koch's permission. Therefore, Supreme/White are "insureds" under the Policy, Great West was required to provide them coverage, and Koch is obligated to reimburse Great West in the amount of its Retention.

Koch relies on the following Policy language to argue that Supreme/White are not "insureds":

> However, none of the following is an 'insured':

9

> a. Any 'trucker', or his or her agents or 'employees', other than you and your 'employees':
>
> > (1) If the 'trucker' is subject to motor carrier insurance requirements and meets them by a means other than 'auto' liability insurance.
> >
> > (2) If the 'trucker' is not insured for hired 'autos' under an 'auto' liability insurance form that insures on a primary basis the owners of the 'autos' and their agents and 'employees' while the 'autos' are being used exclusively in the 'truckers' business and pursuant to operating rights granted to the 'trucker' by a public authority.

(Policy at 30.) Based on this language, Koch argues that "it is undisputed that [Supreme/White] were not employed by or affiliated with [Koch] and were covered by their own insurance policies, not the Policy; therefore [Koch] is under no obligation to relinquish its $500,000 [Retention] to settle a claim that did not implicate [Koch]." (Koch Mem. in Opp'n at 16.)

The Court determines that Supreme/White are insureds under the Policy. The Policy provisions that Great West relies upon, given their plain meaning, apply to Supreme/White as permissive users of Koch's trailer. Thus, under the "who is an insured" provision, Supreme/White appear to qualify as insureds. Conversely, the provisions cited by Koch have no apparent application to Supreme/White. The first provision cited by Koch—section a(1)—states that a "trucker" is not an "insured" if it meets the insurance requirements "by a means <u>other than</u> 'auto' liability insurance." (Policy at 30 (emphasis added).) Here, Supreme/White were subject to motor carrier insurance requirements, but

they did meet those requirements through standard "'auto' liability insurance." (Id.) In fact, Koch concedes as much in its memorandum. (Koch Mem. in Opp'n at 16 ("Great West has admitted that Supreme/White 'did procure standard 'auto' liability insurance through Sirius.'").) Therefore, it is unclear to the Court how this provision of the Policy acts to exclude Supreme/White from coverage.

Likewise, with respect to the second provision Koch relies upon—section a(2)—Koch has failed to adequately explain how this provision applies to the facts here. It provides that a "trucker" is not an "insured" if he is not insured under an insurance policy "that insures on a primary basis the owners of the 'autos' . . . ." (Policy at 30.) However, there can be no dispute that Supreme/White were insured by Sirius, and the Sirius policy provided for primary insurance coverage to Supreme/White and Koch. Accordingly, the Court determines that Supreme/White are insureds under the plain language of the Policy.

Koch seeks to avoid this conclusion by arguing that Koch did not "legally 'own'" the trailer being used by Supreme/White under the Minnesota No-Fault Automobile Insurance Act (the "No-Fault Act"). (Koch Mem. in Opp'n at 17.) If Koch was not the owner of the trailer, then Supreme/White cannot qualify as insureds under the Policy because they were not "using with [Koch's] permission a covered 'auto' [Koch] own[s]." (Policy at 30 (emphasis added).) The No-Fault Act provides:

> [i]f a motor vehicle is the subject of a lease having an initial term of six months or longer, the lessee shall be deemed the owner for the purposes of [the No-Fault Act] . . . , notwithstanding the fact that the lessor retains title to the vehicle . . . .

11

Minn. Stat. § 65B.43, subd. 4 (2004).  Supreme/White leased the trailer from Koch pursuant to a 24-month lease.  Therefore, "for the purposes of [the No-Fault Act]," Supreme/White would be "deemed the owner" of the trailer.  (Id.)

Koch relies upon U.S. Fire Ins. Co. v. Fireman's Fund Ins. Co., 461 N.W.2d 230, 233 (Minn. Ct. App. 1990) and Laurich v. Emcasco Ins. Co., 455 N.W.2d 527, 528-29 (Minn. Ct. App. 1990) to support its position that "a lessee's insurance carrier is obligated to provide coverage for a loss when a 'motor vehicle' is the subject of a lease with a period of six months or longer."  (Koch Mem. in Opp'n at 18.)  However, neither case counsels in favor of cutting-off Koch's ownership interest in the trailer in this case.

In U.S. Fire, the Minnesota Court of Appeals held that a regulated trucker has primary insurance obligations.  461 N.W.2d at 232-33.  While it cited the No-Fault Act as support for its conclusion, it did not hold that the trucking entity's policy was the exclusive policy applicable to the plaintiff's claims.  See id.  Similarly, Laurich simply held that even a trucker with possession of a tractor-trailer under a long-term lease must obtain Minnesota insurance.  Laurich, 455 N.W.2d at 528-29.  These cases do not limit the availability of insurance coverage for auto accidents that occur in Minnesota; nor do they hold that a lessee, who could be deemed an owner of a vehicle for purposes of the No-Fault Act, is the exclusive owner of the subject vehicle for all other purposes.  Rather, the cases expand the insurance obligation of those operating motor vehicles under long-term leases,

12

a result not at odds with Great West's coverage decision here.[8]  Accordingly, the Court rejects Koch's argument that, pursuant to the No-Fault Act, it is not the "owner" of the trailer under the Policy.

Finally, Koch argues that "Great West breached the fiduciary duty that it owed to [Koch] by putting its own financial interests ahead of [Koch's] financial interests." (Koch Mem. in Opp'n at 20.)  Great West argues that Koch did not allege a breach of fiduciary duty or bad faith claim in its Complaint, and the Court is inclined to agree.  However, for the sake of completeness, the Court will consider Koch's arguments below.

Koch relies on Short v. Dairyland Ins. Co., 334 N.W.2d 384 (Minn. 1983), for its contention that Great West's actions in accepting coverage and settling with Ellefson constituted a breach of its fiduciary duties to Koch. (Mem. in Opp'n at 19-22.)  It contends that Great West put "its own financial interests ahead of [Koch's] financial interests," (id. at 20), and "the only reason Great West accepted coverage in the [Kelly Litigation] was to avoid a $3,000,000 Miller-Shugart settlement and thereby protect its own financial interests" (id. at 21 (emphasis in original)).

---

[8]It is worth noting that Smetak considered U.S. Fire and Laurich in his coverage analysis for Great West, and determined that the cases did not support a determination that Supreme/White—and not Koch—was the "owner" of the trailer under the Policy.  (Martin Aff. Ex. H at 9-11.)  In fact, Smetak stated that:
> [a]s tempting as it is to seize upon U.S. Fire as authority [for the proposition that Koch was not the owner of the trailer], it only goes so far.  It, too, essentially recognizes two "owners" for different purposes.  And it did not render the trucking entity's insurance the exclusive source for the claims; it was a primary/excess scenario.

(Id.)

In Short, the Supreme Court of Minnesota recognized that "[u]sually . . . the insurer contractually acquires control of the negotiations and settlement, thus oftentimes creating conflicting interests on the part of the insurer." 334 N.W.2d at 387. The Court noted that "[i]n Minnesota, a liability insurer, having assumed control of the right of settlement of claims against its insured, may become liable in excess of its undertaking under the terms of the policy if it fails to exercise 'good faith' in considering offers to compromise the claim for an amount within the policy limits." Id. (citation omitted). That duty of good faith on the part of the insurer "is breached in situations in which the insured is clearly liable and the insurer refuses to settle within the policy limits and the decision not to settle within the policy limits is not made in good faith and is not based upon reasonable grounds to believe that the amount demanded is excessive." Id. at 388 (citation omitted). The court held that the insurance company in Short breached its fiduciary duty to the insured when it repeatedly refused to settle within the policy limits, despite its knowledge that the insured would likely be found liable for damages well beyond those limits, thereby exposing him to personal liability. See id. at 388-89.

The Court determines that there is no evidence that Great West breached its fiduciary duty to Koch by accepting coverage in the Kelly Litigation. While Short's good faith standard likely applies to Great West's conduct in considering whether or not to accept coverage of the Kelly Litigation and ultimately settle with Ellefson, the facts of Short are distinguishable from the facts at issue here. This case is not one in which Great West rejected modest settlement offers in order to take a gamble, thereby exposing Koch

14

to personal liability beyond the Policy limits.  Rather, Great West accepted coverage after detailed and careful consideration of the advice of its seasoned legal counsel.  Great West's decision to accept coverage was based on the not-unfounded hope that Supreme/White would not be apportioned a significant amount of the fault for the accident, in which case the Policy would not be significantly taxed.  Furthermore, with the acceptance of coverage, Great West would avoid a Miller-Shugart settlement, an outcome that could have been beneficial to both Great West and Koch.[9]  This is especially true given the Court's above analysis concluding that Supreme/White are insureds under the policy.

In addition, the evidence indicates that Great West kept Koch apprised of its evolving coverage analysis at the time it was happening.  (See Martin Aff. Exs. S, T, U.)  On September 11, 2003, Great West forwarded the latest Smetak letter to Koch and noted in part that Great West had "not made a decision on whether or not our coverage is excess to the primary layer [Sirius]."  (Martin Aff. Ex. S.)  On September 26, 2003, Great West faxed a Smetak letter of the same date to Koch discussing the likely possibility that Great West

---

[9]After all, if Great West declined coverage, had to defend an action based on a Miller-Shugart settlement, and lost, Koch would still be on the hook for its Retention. Koch makes much of the fact that the decision by Great West to accept coverage was a "strategic" one (see Mem. in Opp'n at 16, 17) and that, because Great West had initially been advised to deny coverage, this indicates a lack of good faith on the part of Great West. What Koch fails to point out, however, is that Smetak's evolving analysis of the coverage issue always encompassed the possibility that there was coverage for Supreme/White under the Policy.  (See Martin Aff. Ex. H (initial Smetak letter, noting that "[a]lthough there are arguments to be made for and against coverage under the Great West policy, there is more benefit to be realized by dispelling the impression that your coverage will apply").)  Thus, the Court does not view Great West's eventual acceptance of coverage as wholly at odds with Smetak's initial analysis of the coverage issue.

15

would be accepting coverage. (Martin Aff. Ex. U.) Accompanying the Smetak letter, Great West wrote to Bill Sullivan, who handled insurance matters for Koch:

> Bill, did you get a chance to discuss these matters with Ted Smetak? The enclosed letter from Ted points out some of the issue[s] that we will undoubtedly face in the next few days. I agree with Ted in that we must be prepared to make some decisions if the situations present themselves.

(Id.) There is no evidence in the record that Koch made any formal objections—or, for that matter, any clear informal objections—to Great West's acceptance of coverage prior to its decision to do so, and Koch cannot make a credible argument that it was left out of the loop on the analysis leading up to that decision. Koch's failure to lodge any documented objection to a determination of coverage prior to Great West's acceptance of coverage can only be construed as acquiescence in that decision, especially considering that Koch was in a position to object to such a determination at the time it was being made. Accordingly, the Court determines that, even if Koch had raised a breach of fiduciary duty claim in its Complaint, that claim would not survive summary judgment.

Having determined that Supreme/White are insureds under the Policy, and that there is no evidence that Great West breached its fiduciary duty to Koch in accepting coverage in the Kelly Litigation and settling with Ellefson, the Court concludes that Koch is obligated to pay Great West the $500,000 Retention under the Policy. Accordingly, Great West is entitled to summary judgment on its Counterclaims, and Koch's Complaint will be dismissed with prejudice.

**Conclusion**

Based on the foregoing and all the files, records and proceedings herein, it is **ORDERED** that:

(1) Great West's Motion for Summary Judgment on its Counterclaims (Doc. No. 22) is **GRANTED**; and the Court **DECLARES** that: (a) Great West acted properly in accepting coverage for the claims arising out of the Kelly accident; and (b) Koch owes Great West $500,000 together with prejudgment interest pursuant to the Retention Endorsement; and

(2) Koch's Motion for Summary Judgment (Doc. No. 38) is **DENIED**, and Koch's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: August  10 , 2006                                    s/Richard H. Kyle
                                                            RICHARD H. KYLE
                                                            United States District Judge